HOPPOCK'S EXECUTORS *vs.* THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY AND THE PENNSYLVANIA RAILROAD COMPANY.

1. The Court of Chancery exercises concurrent jurisdiction with courts of law in cases where, though the rights are of a purely legal nature, other and more efficient aid is required than a court of law can afford, to meet the difficulties of the case and insure full redress.

2. The Court of Chancery will take jurisdiction of a suit whose subject matter is properly cognizable at law, and though adequate relief may be given there, in order to a discovery; and in this case, under the circumstances, it was held that a suit in equity might be maintained for discovery of the party who should be sued at law, and as to the liability of the parties against whom the bill was filed.

3. An agreement by the Delaware and Raritan Canal Company, guaranteeing to A, his heirs and assigns forever, out of the feeder of the canal, sufficient water for three runs of stones at all times, and for a fourth run of stones at all times except when the water could not be taken without injury to the company, &c., in consideration of a grant of land by A to the com-

pany for its purposes according to its charter, and the release of damages. awarded against the company in A's favor on proceedings in condemnation, and the relinquishment by A of valuable water rights in the Delaware river, *held* not to have been *ultra vires.*

---

Bill for relief. On general demurrer by both defendants..

*Mr. E. T. Green,* for demurrants.

*Mr. W. Halsted,* for complainants.

THE CHANCELLOR.

The causes of demurrer assigned on the argument were, that the contract on which the bill is filed was *ultra vires,* and that if it were not, the complainants have an adequate remedy at law. The bill is filed by the executors of William L. Hoppock, deceased, and the claim to relief is based on an agreement in writing, made on or about the 27th of June, 1834, between the testator and John S. Wilson, of the one part, and the Delaware and Raritan Canal Company, of the other part, by which the company guaranteed to Hoppock and Wilson, and their heirs and assigns forever, out of the feeder of the canal, sufficient water (to be taken out above the dam then to be built across Wickhechcoke creek,) for three runs of stones at all times, and for a fourth run of stones at all times except when the water for it could not be taken out without injury to the company, as to which it was to be the judge. The water used for the mill was to be discharged into the feeder, and Hoppock and Wilson, by the agreement, agreed " to release to the company the damages assessed by the commissioners," and agreed also that the company, in passing through their land, might take, if it saw fit, a strip of that land not exceeding fifteen feet in width in addition to what it then had along the line of its canal, and also land, in size not to exceed thirty by fifty feet, for a house for the keeper of the guard-lock ; and they thereby yielded up all privileges or rights of taking water for mills out of the river Delaware. The bill alleges that Wilson subsequently transferred all his

rights in the premises to Hoppock, and that afterwards, in 1872 and 1873, the company, in violation of the agreement, failed to supply Hoppock with water, which caused him a loss in damages about $350, to which sum he, in his lifetime, was, and the complainants, as his executors, since his death, have been, entitled accordingly from the company, or from any other company or companies upon which its liability may have devolved. The bill further states that the canal company was, under the act of February 15th, 1831, consolidated with the Camden and Amboy Railroad and Transportation Company, and that the act provided that the companies should be jointly liable on all contracts made or to be made by either and each of them, and might jointly sue and be sued, plead and be impleaded, in all courts of law and equity. It further states that under the act of March 17th, 1870, the joint companies were consolidated with the New Jersey Railroad and Transportation Company, and that the consolidation adopted the name of The United New Jersey Railroad and Canal Company, and that, by the last-mentioned act, it was provided that the consolidation should not release or discharge the united companies, or any company or companies with which they should be consolidated, from any taxes, liabilities, obligations, or duties which they or either of them might be subject or liable to, either to the state or any other person or persons. The bill charges that, by the consolidation, The United New Jersey Railroad and Canal Company assumed all the duties, contracts and liabilities of the canal company, including the damages claimed by the complainants by reason of the breach of covenant. It further states that the former company, in 1872, leased its railroads and canal and franchises, under the act of March 17th, 1870, for nine hundred and ninety-nine years, to the Pennsylvania Railroad Company, and that the lease was ratified by the legislature. The bill claims that the last-named company, as lessees, became liable to discharge the covenants and obligations of the canal company. It further states that the act of March 14th, 1872, provided that, on the consolidation of the canal company, the Camden and Amboy Railroad

Company, and the New Jersey Railroad Company, those companies should cease to exist as separate organizations; and it further states that they have, in fact, ceased to exist accordingly, and have not had, since the act of 1872 was accepted, any officers or agents, so that no service of process can be made on either the canal company or the Camden and Amboy Railroad Company; and it further states that the Pennsylvania Railroad Company holds, under the lease, all the property of the canal company.

The bill seeks relief on the ground of the inability of the complainants to obtain redress at law from want of information as to whom they should sue, and it asks discovery. I am satisfied that the complainants are entitled to the aid of the court in the premises. With a cause of action for damages against the canal company, (and by the act of February 15th, 1831, against the Camden and Amboy Railroad Company, also,) they are unable to proceed against either of them, because these companies have both ceased to exist. The United New Jersey Railroad and Canal Company, which succeeded them, received, as a consolidation, all of the property of the consolidated companies, "subject," in the language of the act, "to all the duties and obligations" then "existing upon or made by said three corporations," and "subject to all contracts, agreements and engagements" theretofore "lawfully made" by those companies or either of them. That company has parted with the possession of all the property which belonged to the consolidated companies, by leasing it, as above mentioned, to the Pennsylvania Railroad Company and delivering it over to that company, which now holds it accordingly, and according to the bill, denies its liability to answer for the breach of the covenant. The property of the covenantor (part of it, perhaps, that which entered into the consideration of the covenant,) is here in the hands of lessees, whose lessors received it "subject to" the covenant, and the lessees claim to hold it free from obligation or liability in respect to the covenant. The lessors have no property which can be reached at law. Under the circumstances, the complainants are entitled

to discovery as to the liability of the lessees in the premises. They will not be required to try experiments at law. They are entitled to know whether the lessees are not liable. When discovery shall have been made, this court will act in the matter in conformity with its practice, and with due regard to the rights of the parties in reference to the forum in which the question of breach and damages should be tried. Said Chancellor Williamson, in *Little* v. *Cooper*, 2 *Stockt.* 274, on the subject of jurisdiction in cases where discovery is sought: "Where the subject is one which is properly cognizable at law only, and adequate relief can be given there, as where damages are to be ascertained or titles to land tried, and in cases of mere trespass, a Court of Chancery frequently takes jurisdiction, in order that a discovery may be had on the oath of a party, or to compel the production of papers and documents. The end for which the jurisdiction of the court was invoked having been attained, the party seeks his redress in the proper tribunal at law." In *Pearce* v. *Creswick*, 2 *Hare* 286, Vice-Chancellor Wigram said that "the necessity a party may be under, from the very nature of a given transaction, to come into equity for discovery, is a circumstance to be regarded in deciding upon the distinct and independent question of equitable jurisdiction." This court exercises concurrent jurisdiction with courts of law in cases where, though the rights are of a purely legal nature, other and more efficient aid is required than a court of law can afford, to meet the difficulties of the case and insure full redress.

But the defendants insist that the agreement stated in the bill and on which this suit is founded, was *ultra vires ;* and the case of *Armstrong* v. *Pennsylvania R. R. Co.,* 9 *Vroom* 1, is cited in support of this position. That case, however, does not sustain it. On the contrary, it was there held that it was not *ultra vires* for the canal company, having a right to draw water from the Delaware river for its chartered purposes, to agree to discharge its waste water at a certain point ; and that an action on such an agreement could be maintained. The agreement stated in the bill was not, as the defendants' counsel

insists it was, an agreement to sell the water, nor was it an agreement to furnish water for power, for a consideration unconnected with the business of the company, but it appears to have been a contract by which, in consideration of a grant of land by Hoppock and Wilson to the company, for its purposes, according to its charter, and the release of damages awarded against it in their favor, on proceedings in condemnation under the charter, and the relinquishment by them of water rights on the Delaware, the company agreed with them that they and their heirs and assigns should have water from the feeder at all times, absolutely, to a certain extent, and conditionally, to a certain further extent. The arrangement appears to have been the means by which the company obtained the release of damages assessed against it, and made compensation for the water rights and land above mentioned, acquired by it from Hoppock and Wilson. That the company had power to make such an agreement on such a consideration, cannot be doubted. It was not in conflict with its interests or the dictates of public policy, in connection with the purposes for which it was chartered. It does not appear, indeed, but that the arrangement was the most judicious that could have been made in the premises by the company, nor but that by means of it, and for a consideration which practically neither cost it anything nor inconvenienced it in any way, it acquired land for its purposes, and acquired, or extinguished in its own interest, valuable water rights, for which it otherwise would have been compelled to pay a large price. In Armstrong v. Pennsylvania R. R. Co., Chief Justice Beasley, delivering the opinion of the court, said: " I see no legal obstacle to this canal company, being in need of a place over which to discharge its waste water, agreeing with a landowner that in consideration of such privilege, he shall have the use of such water so long as it is consistent with the convenience or well-being of the company to let it off at that point. Whether an agreement can go beyond that and stipulate for a continuance of such supply, notwithstanding that, in the fair judgment of the officers of the company, its

convenience or real interest requires the cessation of such privilege, is a more important, and, it may be, a more difficult question, which it is not necessary to consider until the state of the circumstances is presented to the court." On the case made by the bill, it does not appear that the water agreed to be furnished absolutely, could not have been furnished at all times when it is alleged to have been withheld, without inconvenience to the company or its operations.

The bill prays specific performance of the covenant as part of the relief.

The demurrers will be overruled, with costs.